BEFORE THE SECOND DIVISION, JANUARY 5, 1960

**No. 63672.**—J. E. Bernard & Company, Inc. v. United States, protests 321098–K/9267, 321109–K/9283, and 322735–K/9246 (Chicago).

OLIVER, Chief Judge: These protests relate to merchandise that is variously described on the invoices as burners, or cast-iron burners, or castings and which was classified as manufactures of metal, not specially provided for, composed wholly or in chief value of iron, under paragraph 397 of the Tariff Act of 1930, as amended, and assessed with duty either at 22½ per centum ad valorem or 21 per centum ad valorem, depending on the date of entry of the merchandise.

Plaintiff claims that the merchandise is properly classifiable under the provisions in paragraph 327 of the Tariff Act of 1930 for:

* * * castings and vessels wholly of cast iron, including all castings of iron or·cast-iron plates which have been chiseled, drilled,· machined, or otherwise advanced in condition by processes or operations subsequent to the casting process but not made up into articles, or parts thereof, or finished machine parts; * * *.

The foregoing provisions carry a dutiable rate of only 5 per centum ad valorem, by virtue of the amendment to said paragraph 327 under T.D. 52739.

The evidence herein, all of which was introduced by plaintiff, consists of the testimony of one witness and two samples of merchandise. Following is a summary of the record.

The merchandise in question, as shown from an examination of the sample (plaintiff's exhibit 1), is a hollow, circular form or shape, composed of iron, about 5 inches in diameter and 1 inch thick. Completely encircling the perimeter are two rows of small holes, approximately one-sixteenths of an inch in diameter. The holes run parallel and are equally spaced, about one-fourth of an inch apart. On top is a threaded hole or opening about seven-eighths of an inch in diameter.

Plaintiff's witness, an engineer, is the head of the hot-water heater division of the Harrison Sheet Steel Co. of Chicago, importer of the present merchandise, whose business is the manufacture and fabrication of steel products, including kitchen cabinets, shower stalls, and similar articles. The witness stated that his duties include the design of hot-water heaters and all necessary preliminary work essential for the production thereof. Referring specifically to the merchandise in question, he testified that it is a gray iron casting (not malleable iron) produced from molten pig iron, plus some scrap iron,. that is "put into a crucible, melted, and poured into a form, a sand form," drawn from a wooden pattern of predetermined shape. Following the casting operation, which includes the opening in the top (described by the witness as "the nipple"), the perimeter is drilled to produce the small holes running parallel around it, and the nipple is tapped and threaded. In its imported condition, the merchandise is not susceptible of any use. To become available for its ultimate use, there must be added a· so-called "venturi tube" (plaintiff's illustrative exhibit 2), which appears to be in two parts. One part is the tube, itself, which is approximately 4 inches long and is threaded for about three-fourths of an inch and has two holes, about three-fourths of an inch in diameter, near the bottom. The other part is an air shutter, made of aluminum, that fits around the tube and is designed to cover the holes near the bottom. The venturi tube is made so the threaded part fits into the nipple of the imported merchandise. The combination of the imported casting (exhibit 1, *supra*) and the venturi tube (illustrative exhibit 2, *supra*) makes a complete burner that is put into the combustion chamber of an automatic storage hot-water heater, which, in its entirety, consists of a tank, insulation, outer jacket, combustion chamber and base, gas burner, thermostat, and drain. Explaining the operation of the hot-water heater, the witness testified as follows (R. 14):

* * * The gas is introduced automatically through a thermostat to the burner itself which automatically ignites when the temperature of the water reaches a predetermined setting on the thermostat. At another predetermined setting which is built into the thermostat itself the burner turns itself off and the water is kept in storage until such time as it is needed.

The burner is equipped with a small gas pilot that is constantly lit. When the gas is introduced into the burner, the pilot ignites the gas which, in turn, heats

the water. The completed burner has a tight-fitting orifice, "which is predrilled for the amount of gas that we want to go into the burner." (R. 12.)

Plaintiff, in its brief, relies upon the case of *United States* v. *The Singer Manufacturing Company*, 37 C.C.P.A. (Customs) 104, C.A.D. 427, as support for its contention that the articles in controversy come within the provisions of paragraph 327 of the tariff act as castings of iron.

It is our view, however, that the *Singer* case is clearly distinguishable inasmuch as the rough castings there before the court, shown to be of a particular form intended for ultimate use as a part of a power transmitter or a power table, were held to be castings of iron which had not been advanced in condition subsequent to the casting processes so as to be made up into articles or parts thereof or into finished machine parts and, therefore, came within the purview of said paragraph 327.

The articles in the *Singer* case consisted of rough, unmachined castings of iron with nothing done to them after the foundry work, except tumbling, grinding, and sandblasting, to remove any burrs or projections. None of the castings had been machined, drilled, or otherwise advanced in condition before importation and none of the castings in their imported condition could be used as a part of a power transmitter or power table which was their intended use in their finished condition. Also, none of said castings could be used in their imported condition for any commercial use as a made-up article or as a part of a made-up article, or as finished machine parts. The only use of said castings was to be made into parts for a power transmitter or power table after essential additional work was done on them, including milling, drilling, facing, tapping, boring, reaming, counter-boring, japanning, grooving, grinding, and assembling.

From the testimony of the sole witness who appeared in the instant case and testified on behalf of plaintiff, it appears that the articles here in controversy in their imported condition are joined after importation with so-called "venturi tubes" and thereupon become complete burners ready for use in the combustion chambers of automatic storage hot-water heaters.

Note is taken of the fact that paragraph 327, invoked by plaintiff herein, while providing for castings of iron, including such as have been chiseled, drilled, machined, or otherwise advanced in condition by processes or operations subsequent to the casting processes, specifically excludes castings which have been "made up into articles, or parts thereof, or finished machine parts."

The present merchandise, in its condition as imported, is an essential component of a particular gas burner, which consists of a "venturi tube" of domestic manufacture and the imported casting that is involved in this controversy. The complete gas burner, made up of the casting with the tube fitted thereto, is an integral part of a hot-water heater. Under the well-established principle that "an integral part of an integral part of an article is an integral part of such article," *United States* v. *American Express Co.*, 29 C.C.P.A. (Customs) 87 (at page 93), C.A.D. 175, the iron casting in question is, for tariff purposes, a part of the hot-water heater discussed herein. The conclusion brings the present merchandise within the exclusionary language of paragraph 327, *supra*, and, accordingly, removes the casting involved herein from classification under the provisions of that paragraph, invoked by plaintiff.

On the basis of the present record, and for all of the reasons hereinabove set forth, the protests are overruled and judgment will be rendered accordingly.